NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Bankruptcy Case No. 10-27479 |
| Raymond and Mary Taggart | Chapter 7 |
| Debtors | **MEMORANDUM OPINION**<br>Motion to Sell (Document #37)<br>Cross-Motion to Compel<br>Abandonment (Document #45) |

**APPEARANCES**

Attorney for Debtors
Adam Schneider, Esquire
Law Office of Adam Schneider
1141 Lincoln Square
Long Branch, New Jersey 07740

Attorney for Dennis and Kathleen Taggart
Jeffrey M. Rosenblum, Esquire
98 Cutter Mill Road
Suite 384 N
Great Neck, New York 11021

Attorney for Trustee
Daniel E. Straffi, Esquire
670 Commons Way
Building I
Toms River, New Jersey 08755

On January 22, 2013, the court took oral argument on the Trustee's Motion to Sell 1018 Denton Ave., New Hyde Park, NY ("Property") and a Cross-Motion to Compel Abandonment of 1018 Denton Ave., New Hyde Park, NY.

It is a well-worn aphorism that the law is hostile to secret interests in real estate.[1] The current situation is a prime example of the thorny situations brought about by hidden interests in real property.

The court will begin with the cross-motion to compel abandonment. Section 554(b) provides that "[o]n request of a party in interest, and after notice and a hearing, the court may order the Trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit."[2] In a motion to compel abandonment under § 554(b), the burden is on the movant to make out a prima facie case.[3] The movant's case may then be rebutted by evidence that the estate does have some equity in the property, including proof that the asserted interest can be subordinated to an interest of the trustee.[4] The movant's ultimate burden of proof is the preponderance of the evidence.[5]

The cross-motion to compel abandonment is brought jointly by the Debtors and Dennis and Kathleen Taggart (collectively "Taggarts"). Although not fully articulated as such, the Taggarts have two distinct arguments. The first is that the Property never came into the bankruptcy estate by virtue of § 541(d). The second is that even if the Property is property of the estate, the court should impose a constructive trust over it in favor of Dennis and Kathleen Taggart.

---

[1] In re Bridge, 18 F.3d 195 (3d Cir. 1994)
[2] 11 U.S.C. § 554(b)
[3] In re DiDario, 232 B.R. 311 (Bankr. D.N.J. 1999)
[4] In re Paolella, 79 B.R. 607, 610 (Bankr. E.D. Pa. 1987)
[5] In re Siegel, 204 B.R. 6 (W.D.N.Y. 1996)

The first argument can be readily dismissed. Section 541(d) provides that "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property … becomes property of the estate … only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."[6] The uncontested facts of this case do not support a finding that as of the date of filing Raymond Taggart had only bare legal title. The Taggarts consistently refer to Raymond Taggart as the "disclosed nominee" for the purchase of the Property. Tellingly, the Taggarts never explain what the term "disclosed nominee" means or why it should control the outcome of this motion. More importantly, every single one of the documents that have been submitted in connection with this motion, including the mortgage and the deed, refer to Raymond Taggart as the purchaser. The term "disclosed nominee" does not appear anywhere. The Taggarts lament the fact that Raymond did not transfer title to the property to Dennis and Kathleen prior to the bankruptcy filing, but that argument ignores the fact that the mortgage was in Raymond's name and he was not free to transfer away the lender's collateral without consent of the mortgage holder.

The uncontroverted facts compel the conclusion that Raymond Taggart held more than bare title to the Property: he paid approximately $20,000 to acquire the Property; he obligated himself on a mortgage; and he is listed as the sole owner of the property on all legal documents. It is also important to note that no court imposed a constructive trust pre-petition. A constructive trust is a remedy in equity and as such does not arise until it is imposed by a court.[7] Accordingly, the court finds that the Property is property of Raymond's bankruptcy estate.

---

[6] 11 U.S.C. § 541(d)

[7] In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1575 (9th Cir. 1985) ("A constructive trust is not the same kind of interest in property as a joint tenancy or a remainder. It

The Taggarts' second argument has two components: 1) should a constructive trust be imposed; and 2) if a trust is imposed could the Trustee still prevail under § 544. In In re Dwek,[8] this court had the opportunity to address the broader question of whether a bankruptcy court has the authority to impose a constructive trust post-petition. After surveying the extant law on the issue, this court concluded that "when distilled down to their essence, the holdings of these cases is not that bankruptcy courts do not have the power to impose a constructive trust post-petition, but rather that bankruptcy courts should tread very lightly. A survey of the Circuit Courts of Appeal that have directly addressed the issue show a grave concern over the application of the constructive trust remedy in bankruptcy."[9] Since the Dwek decision, other courts in this Circuit have reached the same conclusion.[10]

The next question is whether a trustee's strong arm powers prevail over any post-petition constructive trust.[11] This court in Dwek, relying on a Third Circuit opinion, found that "Section 541(d)'s limitation on the scope of the bankruptcy estate prevails over the trustee's strong-arm powers under section 544 of the Code."[12] Since then, this court has had the benefit of Judge Stern's erudite analysis of the issue in In re Day, which concludes that the above quoted language in Universal Bonding is dicta and is a poor fit for real property cases.[13] This court is

---

is a remedy, flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it.")

[8] 2009 WL 1119422 (Bankr. D.N.J. 2009)

[9] Id. at *3

[10] See, e.g., In re Day, 443 B.R. 338 (Bankr. D.N.J. 2011); In re Washington Mut., Inc., 450 B.R. 490 (Bankr. D. Del. 2011); In re Allen, 2012 WL 693461 (Bankr. D.N.J. March 2, 2012).

[11] Section 541 can also be read in such a way that there is no tension between § 541(d) and § 544. Section 541(d) addresses property that "becomes property of the estate under subsection (a)(1) or (2) of this section", while property that becomes property of the estate as a result of the trustee's strong arm powers falls under § 541(a)(3).

[12] Dwek, quoting, Universal Bonding Ins. Co. v. Gittens and Sprinkle Enterprises, Inc., 960 F.2d 366, 372 n. 2 (3d Cir. 1992)

[13] 443 B.R. 338 (Bankr. D.N.J. 2011)

mindful that even dicta from a precedential opinion is entitled to deference, but the cogent reasoning in <u>Day</u> now convinces the court that the language it relied on from <u>Universal Bonding</u> was not intended to govern this precise situation, and can be viewed as limited to the specific facts of that case involving the imposition of an equitable lien.

The court must now turn to New York law to determine when the interests of a bona fide purchaser under § 544(a)(3) trumps an unrecorded equitable interest.[14] Bankruptcy Code § 544 provides that: "(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—... (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."[15] Under New York law, a bona fide purchaser of real property will, upon the recording of its conveyance, take title free of any unrecorded interest.[16] There appears to be a disagreement in the New York courts as to what level of knowledge would destroy a trustee's status as a bona fide purchaser. One bankruptcy court addressed that issue in the context of a dispute between a Ch. 7 trustee and the Federal Aviation Administration (FAA) over real property the debtor had acquired for expansion of its airport under a grant pursuant to the Airport Improvement Program (AIP).[17] The FAA contended that any buyer of airport property should be deemed to know about the possible existence of an AIP claim, and that this

---

[14] <u>In re Cirasuolo,</u> 48 B.R. 447 (Bankr. N.D.N.Y. 1985) ("It is clearly settled that although the Trustee's status as of the date of the petition is conferred by Code § 544, his rights with regard to third parties are to be determined in accordance with state law.")
[15] 11 U.S.C. § 544
[16] N.Y. Real Prop. Law § 291
[17] <u>In re Premier Airways, Inc.</u>, 303 B.R. 295 (Bankr. W.D.N.Y. 2003)

possibility precluded the trustee from holding the status of a bona fide purchaser. The bankruptcy court disagreed, finding that knowledge is not the test under § 544. The court found that: "[u]nder subdivision (a)(3), the trustee is not required to prove his or her bona fides. Rather, the trustee is presumed to hold the status of a bona fide purchaser of real property "from the debtor, against whom applicable law permits such transfer to be perfected."[18] If this court relies on Premier Airways then it is the end of the analysis: the Chapter 7 trustee is a bona fide purchaser and thus takes priority over the Taggarts' unrecorded equitable interest.[19] Most New York courts, however, have found that a trustee's personal knowledge should not be confused with a lack of notice under relevant state law.[20] This court finds this majority line of cases to be more persuasive. Otherwise, a trustee would be given rights far exceeding those of the already favored bona fide purchaser. The court also notes that the Premier Airways case did not address any of the conflicting cases and has not been cited by another court for that proposition in the decade subsequent to its publication.

An examination of New York law reveals that notice sufficient to bar a purchaser from avoiding an unrecorded interest as a bona fide purchaser may arise by: (a) actual knowledge; (b) constructive notice of what may be revealed by an examination of the records; or (c) possession

---

[18] Id. at 298

[19] That would not be the result if the court were deciding this matter under Third Circuit law. Shortly after the adoption of the Bankruptcy Code, the Third Circuit ruled that the words "without regard to any knowledge" in § 544(a)(3) were not intended by Congress to nullify all state law protections of holders of equitable interests. McCannon v. Marston, 679 F.2d 13 (3d Cir. 1982). Thus, although § 544 provides that a trustee's actual knowledge is not relevant, a trustee is still bound by the state law regarding recordation and constructive notice, as well as other state law limitations upon bona fide third party purchaser status.

[20] *See, e.g.,* In re Cirasuolo, 48 B.R. 447 (Bankr. N.D.N.Y. 1985); In re Euro-Swiss International Corp., 33 B.R. 872 (Bankr. S.D.N.Y. 1983); In re Hardway Restaurant, Inc., 31 B.R. 322, 329 (Bankr. S.D.N.Y. 1983) ("a trustee must be without notice of any kind under applicable state law to avoid an interest in real property pursuant to Section 544(a)(3).").

by a third party.[21] In fact, there is a strong preference in New York law for finding that open and visible possession by a third person places a purchaser on constructive notice of the possible existence of prior rights.[22] Here, Dennis and Kathleen Taggart were in open and visible possession of the Property for more than a decade. Additionally, the title owner of the Property lived in New Jersey. Under New York law, those facts would be sufficient to defeat the trustee's status as a bona fide purchaser.

That brings the court full circle to the question of whether equity demands the imposition of a constructive trust in favor of Dennis and Kathleen Taggart. As stated by Judge Stern:

> At a minimum, the greatest caution should be exercised before bankruptcy courts enter the postpetition thicket to remediate by establishing, in the first instance, a constructive trust. Indeed, many of the purported precedential cases for any such extraordinary bankruptcy court actions have tight tethering to prepetition judicial determinations, well-established prepetition federal or state statutory or regulatory policy regimes, or the clearest footing in trust law.[23]

In this case, no judicial determination, policy rationale or trust theory demands the use of such an extraordinary remedy as the imposition of a postpetition constructive trust.

At best, what the facts show is that Dennis Taggart and his brother Raymond had some sort of agreement that in exchange for paying all of the carrying costs of the Property, Dennis and Kathleen Taggart would be allowed to reside at the Property. What is not clear, and the Taggarts had the burden of establishing it, is that there was an agreement to transfer title to the Property to Dennis and Kathleen Taggart. Even assuming such an agreement existed, the exact parameters of the agreement, such as when title was to be transferred, have not been established. Because Raymond did not have the financial wherewithal to pay the mortgage himself, it is quite

---

[21] Hardway Restaurant, 31 B.R. at 329
[22] See, e.g., 487 Elmwood, Inc. v. Hassett, 83 A.D.2d 409, 445 N.Y.S.2d 336 (1981)
[23] In re Day, 443 B.R. at 346

plausible that if Raymond intended to transfer title to his brother it would not happen until the mortgage had been paid in full.

Under New York law, a party claiming entitlement to a constructive trust must ordinarily establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. Courts applying these factors have noted that although these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be "rigidly limited."[24] Even taking the loose view of these factors that the Taggarts' counsel urges on the court, the evidence still fall short. Even if the court assumes that the first three factors are present here, the Taggarts cannot establish the fourth and most important factor – unjust enrichment. It is simply not unjust for Raymond Taggart to be considered the owner of the Property when he used his good credit rating to obtain a mortgage, paid $20,000 in closing costs, and obligated himself on a mortgage thus bearing the risk of destroying his credit rating in the event that Dennis and Kathleen Taggart once again failed to make mortgage payments.[25] It is incontrovertible that Raymond Taggart is an innocent party here – he did not obtain the property through fraud or other illicit means as is typical in constructive fraud cases. The court is aware that sometimes innocent parties have been found to be unjustly enriched. It is sufficient that the party hold property "under such

---

[24] Id. (internal citations omitted); *see also*, Bankers Sec. Life Ins. Soc'y, 49 N.Y.2d at 930, 406 N.E.2d at 440, 428 N.Y.S.2d at 624 (application of doctrine to particular circumstances "susceptible of some flexibility").

[25] The flawed logic underlying the Taggart's constructive trust argument can best be seen if the situation were reversed. Suppose Raymond and his brother had a falling out and Dennis decided to stop paying the mortgage on the Property and move out. Then, based on the Taggarts' logic, Raymond could simply go to a court and obtain an order compelling Dennis and Kathleen to pay the mortgage on the theory that they are the equitable owners of the Property and he merely holds bare legal title. Given that there is no written agreement that obligates Dennis to pay the mortgage, Raymond would be hard pressed to find a court that would grant him such an order.

circumstances that in equity and good conscience he ought not to retain it."[26] At oral argument, counsel for Dennis and Kathleen Taggart stated that Raymond Taggart had urged Dennis to take steps to have the Property transferred into his name. While that statement is not evidential, if taken as true it actually militates in favor of not imposing a constructive trust. Equity generally does not help those who could have helped themselves and chose not to act. That appears to be the case here. If the court assumes that Raymond Taggart intended to transfer the Property at some point, it was inequitable on the part of Dennis and Kathleen Taggart to fail to take steps to obtain their own mortgage and relieve Raymond of that burden. Instead, Dennis and Kathleen were apparently content with the status quo in which they had all the benefits of home ownership, but Raymond bore all the risk of foreclosure and loss of his good credit rating. The more likely scenario is that Dennis and Kathleen Taggart were not able to obtain a mortgage and thus were reliant on Raymond, which makes his continued ownership of the Property not unjust enrichment. The Taggarts point out that Dennis and Kathleen have paid large sums of money for the mortgage, taxes and upkeep of the Property. While some of that can be regarded as rent, the court is keenly aware that the Taggarts will not reap the benefit of the money they expended for taxes and upkeep. But if loss of money were enough to justify the imposition of a constructive trust then all creditors in a bankruptcy case could demand one.[27]

For the foregoing reasons, the court finds that there is no basis to impose a constructive trust, therefore, the Taggarts have not sustained their burden of establishing that the Property should be abandoned. The cross-motion is denied.

The cross-motion was the only objection to the proposed sale. The court finds that there is a proper business purpose for the sale because it will result in recovery for unsecured creditors.

---

[26] Miller v. Schloss, 218 N.Y. 400 (2003)
[27] In re First Central Financial Corp., 377 F.3d 209 (2d Cir. 2004)

The court also finds that the sale is proposed in good faith[28] based on the fact that the Property was marketed by a realtor, the sale is an arms' length transaction, this is the third and highest offer received for the Property, and notice of the motion was proper.  The motion to sell the Property is granted.

                                                       */s/ Kathryn C. Ferguson*
                                                       KATHRYN C. FERGUSON
                                                       US Bankruptcy Judge

Dated: January 31, 2013

---

[28] In re Abbotts Dairies of Pennsylvania, Inc 788 F.2d 143 (3d Cir. 1986)